# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDREW KOMKARAN, individually and on behalf of all others similarly situated, | ) ) ) Case No.: 1:24-cv-01554 |
| Plaintiff, | ) ) Hon. Elaine Bucklo |
| v. | ) ) |
| RUST-OLEUM CORPORATION, | ) ) |
| Defendant. | ) ) ) ) |

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
## AND MOTION TO STRIKE

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 1

LEGAL STANDARD ............................................................................................................. 2

ARGUMENT .......................................................................................................................... 3

    I.    Plaintiff Sufficiently Alleges His Claims under New York Law. ........................ 3

    II.    Plaintiff may Proceed with his Unjust Enrichment Claim. ................................... 7

    III.    Plaintiff has Standing to Seek Injunctive Relief. ............................................... 10

    IV.    Premature to Address the Contours of the Proposed Class Before Class Certification. .... 13

CONCLUSION ..................................................................................................................... 15

Plaintiff Andrew Komkaran ("Plaintiff"), by and through his attorneys, responds in opposition to Defendant Rust-Oleum Corporation's ("Rust-Oleum" or "Defendant") Motion to Dismiss and Motion to Strike ("Motion" or "Mot."), ECF No. 17.

## INTRODUCTION

This nationwide consumer class action asserts that Defendant's Watco brand Tung Oil is deceptively labeled. Specifically, the Product's packaging prominently displays the name "Tung Oil," giving consumers the impression that the Product consists of 100% Tung Oil or, at a minimum, is primarily Tung Oil. But, to the consumer's detriment, the Product is less than 20% Tung Oil while Stoddard solvent makes up approximately 30% of the Product and some unknown ingredient—presumably water—makes up approximately 44%.

Plaintiff brings claims under the consumer protection statutes of New York and Illinois,[1] as well as unjust enrichment. Plaintiff seeks to represent a nationwide class of consumers and a New York subclass. Defendant throws a series of kitchen sink challenges at the allegations including failure to state a claim, lack of standing, and asking the Court to rule on the contours of class certification. *See generally* Motion. But as discussed below, these arguments ring hollow, and the Court should deny the Motion.

## FACTUAL BACKGROUND

Displayed on the front label of the Product is the statement "Tung Oil." Complaint (ECF No. 1) (hereafter "Compl.") at ¶ 2. Based on this representation, consumers expect the Product to consist of 100% Tung Oil, or, at a minimum primarily Tung Oil. ¶ 29.

Contrary to Defendant's representation, the Product is less than 20% Tung Oil by total weight. ¶ 31. By contrast, Stoddard solvent makes up approximately 30% of the Product, with

---

[1] Plaintiff withdraws his claim under the Illinois Consumer Fraud Act.

1

some unknown ingredient—presumably water— making up approximately 44% of the Product. *Id.* ¶ 32. Defendant never discloses these facts on the Product label. ¶¶ 2, 31, 32, Compl. Ex. A (only disclosing these facts in the Material Safety Data Sheet). Hence, Defendant's representations that the Products are primarily Tung Oil are false and misleading.

Based on Defendant's misrepresentations and material omissions, Plaintiff and the class members paid a premium price for the products. *Id.* ¶¶ 43-53. By way of example, a package of Watco Tung Oil (32 oz or 1 quart) sells for $28.28. *Id.* ¶ 46. But a package of OAIEGSD Pure Tung Oil (32 oz or 1 quart) sells for $18.98. *Id.* Equally, a 32 oz or 1 quart package of Rockler 100% Pure Tung Oil sells for $10.50. *Id.*

## **LEGAL STANDARD**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case." *Shirley v. Reynolds Consumer Products, LLC*, 2022 WL 13831598, at *1 (N.D. Ill. Oct. 21, 2022) (quoting *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012)). "In resolving such motions, [the Court] 'construe[s] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [his] favor.'" *Shirley*, 2022 WL 13831598, at *1 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). In addition, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

It is equally well-established that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Iqbal*, 556 U.S. at 679. Indeed, "[b]ecause plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (citation omitted).

2

Consequently, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Id.*

As the United States Supreme Court has recognized, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Nietzke v. Williams*, 490 U.S. 319, 327 (1989). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## ARGUMENT

### I. Plaintiff Sufficiently Alleges His Claims under New York Law.

Plaintiff brings claims under New York General Business Law ("GBL") §§ 349 and 350. *See* Compl. ¶¶ 61-79. "To state a claim for false advertising or deceptive business practices under New York . . . law, a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018). "[T]his inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Campbell v. Whole Foods Market Grp.*, 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) (citation omitted).

It is well-established that "[c]laims under GBL §§ 349 and 350 are not required to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Id.* Thus, to survive a Rule 12(b)(6) motion, the Complaint need only set forth "a short and plain statement of the claim showing that [Plaintiff] is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

"It is important to remember that 'at least in some cases, "[a] federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare" that reasonable consumers would not be misled.'" *Barton v. Pret A Manager (USA) Ltd*, 535 F. Supp. 3d 225, 237 (S.D.N.Y. 2021). "And 'Rule 12(b)(6) does not countenance ... dismissals based on a

3

judge's disbelief of a complaint's factual allegations.'" *Id.* at 238 (quoting *Lynch*, 952 F.3d at 75). It is only "'in rare situation[s],' [that] courts may resolve the issue at the motion-to-dismiss stage, where the pleading does not plausibly allege that a reasonable consumer would be deceived." *Id.*

Defendant lodges two arguments for why no consumer could be confused *as a matter of law*. First, the Product does not say "pure" or "100%", and second the Product uses the word "Finish." Mot. at 6. But both arguments are legally and factually flawed; and fatally so.

As to the lack of the terms "pure" or "100%," there is nothing in the law that requires these terms for a consumer to believe that the statement "Tung Oil" is the only, or at least predominant ingredient. The Second Circuit's decision in *Mantikas v. Kellogg Company* is directly on-point. *Mantikas*, 910 F.3d 633 (2d Cir. 2018). In *Mantikas*, the consumer brought a class action for the claims "whole grain" and "made with whole grain" on the Cheez-It products. *Id.* at 634-35. The plaintiff alleged the statements led consumers to believe the products were predominantly whole grain when they were not. *Id.* at 635. The district court dismissed, holding a reasonable consumer would not be misled, but the Second Circuit reversed concluding the allegations that "the conspicuous 'WHOLE GRAIN' and 'MADE WITH WHOLE GRAIN' claims on the front and center of the Defendant's packaging communicates to the reasonable consumer the false message that the grain content of the crackers is exclusively, or at least predominately whole grain" was sufficient to state a claim that was plausibly deceptive. *Id.* at 638-39.

Building off of this, in *Campbell v. Whole Foods Market Group, Inc.*, the plaintiff brought a class action against the cracker manufacturer for its "Honey Graham" claim on the crackers. *Campbell*, 516 F. Supp. 3d 370, 377 (S.D.N.Y. 2021). Graham is a type of whole-grain flour. *Id.* at 378. In denying the defendant's motion to dismiss, the *Campbell* court reasoned:

> So, put simply, a reasonable consumer who is aware of the meaning of the word "graham" would read the packaging in essentially the same way as the plaintiffs

4

>in *Mantikas*. She would understand that the packaging represents that the product is made from "whole grain." Just as in *Mantikas*, a reasonable customer could find the packaging of the Product [to] be misleading because the packaging would "communicate to the reasonable consumer that the grain in the product is predominantly, if not entirely, *whole* grain." *Mantikas*, 910 F.3d at 637. This is true regardless of the fact that the consumer could determine from the ingredient label that refined flour was the principal ingredient. Because the crackers are not predominantly made from whole grain, Plaintiff has plausibly alleged that the packaging is misleading.

*Id.* at 383.

The exact same logic in *Mantikas* and *Campbell* applies here. The bold claim that the Product is "Tung Oil" can plausibly deceive consumers into believing the product is either "exclusively, or at least predominately" Tung Oil. Notably, Defendant does not cite a single case to support its interpretation, much less sufficient authority to say *as a matter of law* that no reasonable consumers could be deceived. This is not a "rare situation" where the allegation is implausible as a matter of law.

Defendant cites to the fact that the comparator products both say "pure" and "100%", but there is no factual basis to believe these products were next to Defendant's Product when it was sold. In fact, the Rockler brand is exclusively sold at Rockler stores but the Watco Product is sold at Home Depot, Menards, and Walmart. *See* Compl. ¶ 8. Moreover, *Mantikas* made clear that "[r]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Mantikas*, 910 F.3d at 637. This same can be said with equal or even greater certainty that "[r]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from" other products—assuming they were even there.

Defendant also argues that the term "finish" somehow disclaims any notion that the Product is not exclusively, or even predominantly, Tung Oil. Mot. at 6. The only authority it cites for this proposition is a statement from Wikipedia. *See* Mot. at 2-3 (quoting a statement on Wikipedia).

5

But this statement from Wikipedia does not appear anywhere in the Complaint, was not attached to the Complaint, is not critical to the claim, and is not the subject of judicial notice. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (" A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice"); *see also Heid v. Mohr*, 2020 WL 2764029, at *6 (S.D. Ohio May 28, 2020) (gathering cases saying Wikipedia is too unreliable to take judicial notice of). As such, the Court cannot consider it on this Motion.[2]

Moreover, the word "finish" on the Product is far from sufficiently definitive to act as a disclaimer. Under New York law, "[a] disclaimer may not bar a GBL § 349 claim at the pleading stage unless it utterly refutes plaintiff's allegations and thus establishes a defense as a matter of law" *Himmelstein, McConnel, Gribben, Donoghue & Joseph, LLP v. Matthew Bneder & Co.*, 37 N.Y.3d 169, 180 (N.Y. 2021) (citation omitted). "The defendant must do more than disclaim liability generally; instead, a disclaimer must address the alleged deceptive conduct precisely, so as to eliminate any possibility that a reasonable consumer would be misled." *Id.* "Furthermore, where the overall impression of the representations is misleading (notwithstanding the disclaimer), the disclaimer is not a defense as a matter of law." *Id.*

Merriam-Webster defines "finish" in this context to mean "a finishing material used in painting" or " the final treatment or coating of a surface."[3] Nothing in this definition even alludes

---

[2] Even if, *arguendo*, the Court were to consider the statement—something it should not for the reason just stated—the Court cannot accept it as true. Therefore, the Court cannot accept that this is what the word "finish" actually means.
[3] Merriam-Webster, finish (last visited May 24, 2024), https://www.merriam-webster.com/dictionary/finish?utm_campaign=sd&utm_medium=serp&utm_source=jsonld#dictionary-entry-2

to the fact that the product is *not* exclusively or even primarily "Tung Oil". Thus, it cannot be said that the word "finish" "eliminate[s] any possibility that a reasonable consumer would be misled."

Further undermining Defendant's interpretation is the way the word "finish" appears on the Product. Specifically, the phrase "Tung Oil" is in significantly larger small-caps font on a single line. The word "finish" is in much smaller all-caps font on the line below it, with a line separating the two phrases. By separating the phrase "Tung Oil" both physically with a line, and by font size and design, the word "finish" is read just as naturally, if not more so, as a separate descriptive statement rather than part of a contiguous phrase "Tung Oil Finish." This interpretation is supported by the additional language below it, which is a series of statements about the Product (e.g. "will darken with age") each of which is in all-caps and separated by a line.

In short, neither the law nor the facts support Defendant's argument that the phrase "Tung Oil" could not deceive a reasonable consumer as a matter of law. To the contrary, the *Mantikas* and *Campbell* decisions support Plaintiff's position. The Court should deny Defendant's Motion.

**II.     Plaintiff may Proceed with his Unjust Enrichment Claim.**

Defendant primarily argues that the unjust enrichment claim cannot proceed because it is duplicative of the GBL claim. *See* Mot. at 8-9. But it exclusively cites New York law for this proposition. *Id.* Yet, Federal Rule of Civil Procedure 8(d) allows claims to be pled in the alternative. Fed. R. Civ. P. 8(d)(2); *see also* Compl. ¶ 101. The Illinois courts have recognized that whether to allow unjust enrichment to be pled in the alternative is a procedural—not substantive— question. *See Wabash Castings, Inc. v. Fuji Machine Am. Corp.*, 2016 WL 4765717, at *3 (N.D. Ill. Sept. 13, 2016) ("under the federal procedural rules, Wabash may allege promissory estoppel and unjust enrichment/quantum meruit claims in the alternative to its breach of contract claims even though it cannot recover under both breach of contract and quasi-contract theories"). It is well-settled that "for procedural matters. . 'the law of the forum controls.'" *Paulsen v. Abbott*

*Laboratories*, 39 F.4th 473, 477 (7th Cir. 2022). Thus, whether Plaintiff may plead the unjust enrichment claim in the alternative is governed by Illinois federal common law, not New York federal common law, and the Illinois courts have consistently allowed such claims in the alternative. *See e.g. Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1166 (N.D. Ill. 2022) (rejecting motion to dismiss unjust enrichment claim as duplicative because it could be pled in the alternative); *Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1087 (N.D. Ill. 2018) (same); *Clark v. Blue Diamond Growers, Inc.*, 2023 WL 4351464, at *9 (N.D. Ill. July 5, 2023) (same).

Defendant's remaining argument against unjust enrichment is that it is barred by the economic loss doctrine. But the argument is completely inapplicable because the GBL claims sound in tort, not contract. *See Exist, Inc. v. Toio Marine Am. Ins. Co.*, 2024 WL 96347, at *1 (S.D.N.Y. Jan. 9, 2024) ("five claims sounding in tort . . . a violation of New York General Business Law § 349"). Nor is there any contract at play. Thus, the principle underlying the economic loss doctrine (*i.e.* to "preserve[] the distinction between the laws of tort and contracts") is likewise not at play. *See PPC Broadband, Inc. v. Transformix Eng., Inc.*, 2015 WL 339564, at *16 (N.D.N.Y. Jan. 26, 2015) (quotation cleaned up). In fact, Defendant does not cite a single case in which the economic loss doctrine has been applied because there is also a GBL claim. Rather, the two cases it cites both involved breach of contract claims. *See PPC Broadband*, 2015 WL 339564, at *3 ("Plaintiff filed the instant complaint alleging six causes of action based in breach of contract…."); *Culwick v. Wood*, 384 F. Supp. 3d 328, 335 (E.D.N.Y. 2019) ("the complaint presents claims for breach of contract. . .").

The same holds true even if, *arguendo*, the Court applied Illinois law, because there is no alternative contract claim. On-point, in *Garrard v. Rust-Oleum Corp.*, the plaintiff brought a

consumer class action against Defendant for claims on its products' packaging. *See Garrard*, 575 F. Supp. 3d 995, 998 (N.D. Ill. 2021). The claims in the complaint were declaratory judgment, violation of the Missouri Merchandising Practices Act, unjust enrichment, and breach of implied warranty of merchantability. *Id* at 999. Defendant argued—just as it does here—that the unjust enrichment claim was barred by the economic loss doctrine. *Id.* at 1004. But the court rejected this argument, noting "Rust-Oleum does not argue that Illinois law would bar Garrard's claim under the economic loss doctrine, and the court's own research has not identified any cases reaching such a result." *Id.* While Defendant has changed tactics and actually makes the argument this time, there is still no law supporting its position.

Defendant's citations in a footnote miss the mark. In *Thorogood v. Sears, Roebuck & Co.*, No. 06 C 1999, 2006 WL 3302640, at *5 (N.D. Ill. Nov. 9, 2006), contrary to Defendant's assertion, the court did not state that unjust enrichment claims based on alleged false advertising and labeling must be dismissed due to the inescapable conclusion that the dispute arises out of an express contract; i.e., the purchase agreement. Rather, the court concluded "the unjust enrichment claim incorporates by reference the allegations of a valid contract and because this Court again comes to the 'inescapable conclusion' that the dispute arises out of an express contract," the court dismissed the claim. *Id.* at *5. The court was not making the categorical statement Defendant asserts but rather was finding that there was an express contract between the plaintiff and the defendant store from whom he purchased the product directly. Here, there is no contract claim nor was the product at issue (the tung oil) purchased directly from Defendant.

In *Shaw v. Hyatt Int'l Corp.*, No. 05 C 5022, 2005 WL 3088438, at *3 (N.D. Ill. Nov. 15, 2005), the plaintiff relied on the Terms and Conditions of the hotel that he rented a room from for purposes of his claim. Therefore, there was an express contract. That is not the case here.

9

In *Morsberger v. ATI Holdings, LLC*, No. 22 C 1181, 2024 WL 308465, at *5 (N.D. Ill. Jan. 26, 2024), the Court actually denied dismissal of the unjust enrichment claim even though there were express agreements because the plaintiff pled that if there is not an express contract that applies Defendants are liable for unjust enrichment. Here Plaintiff does not plead the existence of a contract at all.

*Budach v. NIBCO, Inc.* No. 2:14-cv-04324, 2015 WL 3853298 at *8 (W.D. Mo., June 22, 2015) is also inapplicable because it was based on Missouri law and in any event, the unjust enrichment claim there relied on an express warranty. In fact, the plaintiff alleged "he would not have 'purchased NIBCO's PEX products had [he] known that those PEX Products were defective and <u>that NIBCO would not honor the terms of its express warranty</u>.'" *Id.* *8 (emphasis added). Here, Plaintiff is not relying on any express contract or warranty.

In sum, Plaintiff does not assert that an express contract existed between him and Defendant.[4] Accordingly, the unjust enrichment claim should not be dismissed.

### III. <u>Plaintiff has Standing to Seek Injunctive Relief.</u>

Defendant contends Plaintiff lacks standing to seek injunctive relief because he "understands that Watco's Tung Oil FINISH is not purely or primarily tung oil, thus eliminating any possibility that he could be deceived by the label in the future." Mem. 9-10. Just as the Court did in *Shirley v. Reynolds Consumer Products, LLC*, the Court should reject Defendant's argument and hold Plaintiff has standing to pursue injunctive relief because he plausibly alleges a sufficient likelihood he will be wronged again in a similar way. *See Shirley v. Reynolds Consumer Products,*

---

[4] Even if, *arguendo*, the Court were to find there is a contract claim—something Plaintiff contests for the reasons stated above—Plaintiff could still plead it in the alternative. *See Cooper v. Cooper*, 657 F. Supp. 3d 1025, 1034 (N.D. Ill. 2023) ("An unjust enrichment claim, on the other hand, can serve as an independent cause of action and can be pled in the alternative to a breach of contract claim, but 'Illinois law holds that a plaintiff cannot recover under both breach-of-contract and unjust enrichment theories'").

*LLC*, 636 F. Supp. 3d 907, 914 (N.D. Ill. 2022); *see also Curran v. Bayer Healthcare LLC*, No. 17-cv-07930, 2019 WL 398685, at *5 (N.D. Ill. Jan. 31, 2019); *see also* Davidson v. Kimberly-Clark Corp., 889 F.3d 956 (9th Cir. 2018); *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 861 (N.D. Ill. 2021) (plaintiffs had standing to seek injunctive relief where they sufficiently alleged they "face[d] a 'legitimate risk of future harm' due to [the defendant's] ongoing fraudulent pricing practices").

> Specifically, Plaintiff avers he
>
> remains in the market for Tung Oil products and continues to shop at stores where the Products are sold. If the Products were actually primarily Tung Oil, as represented on the Products' label, or if the label properly represented the amount of Tung Oil in the Products and were sold at a commensurate price, Plaintiff would purchase the Product again in the immediate future. If the Court were to issue an injunction ordering Defendant to comply with the state and federal laws, and prohibiting Defendant's use of the deceptive practices discussed herein, Plaintiff would likely purchase the Products again in the near future.

Compl. ¶ 13.

These allegations align with those made in *Shirley* where the plaintiff alleged, "she would not have purchased the product at the prices she paid had she known the truth about the origin of its raw materials, but that she 'intends to, seeks to, and will' purchase the product again if she can rely on its labeling." *Shirley*, 636 F. Supp. 3d at 914-15. Likewise, just as in *Shirley*, Plaintff "does not claims that defendant's product was defective but only that it was priced in accordance with characteristics it purported to have but did not." *Id.* at 915.

Plaintiff's allegations also fall squarely within the holdings of *Curran v. Bayer Healthcare LLC* and *Davidson v. Kimberly-Clark Corp.*

In *Davidson*, the Ninth Circuit held that:

> a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of

11

> future harm. ***Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future.*** In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.

*Davidson*, 889 F.3d at 969–70 (emphasis added) (footnote omitted) (citation omitted); *see also Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015) ("A rule that prevents [a previously-deceived] consumer from seeking an injunction doesn't comport with traditional notions of standing; it prevents the person most likely to be injured in the future from seeking redress."). In *Curran*, the Northern District of Illinois followed *Davidson* and held the plaintiff had standing to pursue injunctive relief in a deceptive sunscreen SPF labeling case where the plaintiff alleged he "would purchase the product again in the future if he could be assured that the product was accurately labeled as to its SPF rating and/or that the product conformed to the SPF rating stated on the product packaging." *Curran*, 2019 WL 398685, at *5.

Just as in *Shirley*, *Curran* and *Davidson*, Plaintiff alleges he would like to purchase the Product in the future if it were in fact primarily Tung Oil or the amount of Tung Oil was disclosed and the Product was priced accordingly. Compl. ¶ 13. These allegations are sufficient to establish Article III standing to seek injunctive relief. *See Shirley*, 636 F. Supp. 3d at 915; *Curran*, 2019 WL 398685, at *5; *see also Smith-Brown v. Ulta Beauty, Inc.*, No. 18-cv-00610, 2019 WL 932022, at *14 (N.D. Ill. Feb. 26, 2019) (following *Curran*, 2019 WL 398685, at *5).

Defendant's argument with respect to *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014), is flawed for two reasons. First, from a legal perspective, "[i]nterpreting the *Camasta* court's dicta to instead announce a broad rule that strips a prospective plaintiff of standing to seek an injunction solely because they are aware of a past wrong overreads that court's language and leads to anomalous results." *Le v. Kohls Dept. Stores*, 160 F. Supp. 3d 1096, 1111 (E.D. Wis. 2016). "For example, just because someone is aware that the police have acted brutally in the past

12

does not automatically deprive that person of standing to enjoin brutal police activity *so long as they can show such brutality is likely to harm him/her in the future.*" *Id.*

Second, *Camasta* is factually distinguishable. In *Camasta*, the plaintiffs made conclusory allegations of a threat of future harm, and the offending products were not only mislabeled but also flawed or defective, so it was implausible that the plaintiffs were likely to purchase them again. *Curran*, 2019 WL 398685, at *5. By contrast, here, on encountering the Product again at his local retail stores, Plaintiff plausibly could believe Defendant may have changed the amount of Tung Oil in the Product. However, he will not be able to be sure whether Defendant has done so. *See id.*

Accordingly, at this juncture in the litigation, Plaintiff's allegations suffice to establish standing to seek injunctive relief.

## IV. It is Premature to Address the Contours of the Proposed Class Before Class Certification.

The trend in this Circuit is to reserve judgment on the scope of a class for the class certification motion. *Shirley*, 2022 WL 13831598, at *3 ("the better course on the allegations here is to defer the issue to the class certification stage, as a number of other courts have done"). The analysis in *Wagner v. General Nutrition Corp.* is directly on point, setting forth the sound reasons for deferring such matters to class certification.

> First, courts have denied similar motions before class discovery, the plaintiff's motion for certification, and the benefit of full briefing on the issue of class certification.
> \* \* \* \* \*
> Second, even assuming there are material differences in applicable state law, it may be prudent to create subclasses based on similarities in various states' laws. Roadblocks to class certification "can and often should be solved by refining the class definition rather than by flatly dying class certification.'" *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)). . . . Given that subclasses potentially could resolve problems arising from differences in state law, it is practical to wait until Plaintiff moves for class certification, proposes subclasses, and the parties provide in-depth analysis of the issues relevant to class certification.
>
> Third, at least as alleged, there are major issues in the case that are likely susceptible

13

> to classwide proof. The question of whether the Products' labels are indeed false is perhaps the most important question in the case and the most difficult to answer, as it will likely require expert testimony. Based on the [FAC], the question is likely susceptible to common proof—that is, it can be resolved in "one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).
>
> \* \* \* \* \*
>
> Finally, while GNC points to some differences in state law, it does not show how those differences necessarily preclude class certification so that it is "practicable to resolve the certification question at this stage." [citation omitted] GNC does not explain how the differences in state law it identifies are material based on the pleadings, particularly in light of the broad discretion courts have under Rule 23 to "devised 'imaginative solutions' to resolve problems created by class actions." *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 888 (7th Cir. 2011)). Whether to create subclasses will likely be a central issue during class certification. It is sensible to wait to conduct the relevant analysis until the issues are fully briefed, and the record is fully developed.

*Wagner*, 2017 WL 3070772, at *9 (N.D. Ill. July 19, 2017) (some citation omitted).

The reasoning by *Wagner* applies with equal force to this case.

The court in *Counts* reached a similar conclusion. *See Counts,* 2023 WL 7281851, at *7 (declining to strike nationwide unjust enrichment class at the pleading stage as "premature"). In *Counts*, the defendant did "not attempt to establish the salient differences in law between the states" but rather merely cited cases declining to certify nationwide classes. *Id.* at *8. Defendant does little more, merely gesturing at differences in the laws but provides no explanation for why those differences could not be met under any circumstance. Mot. at 15. For example, it cites a requirement in Oregon for "awareness" but no requirement in Arkansas. But, if Plaintiff establishes Defendant's awareness, he has satisfied both states.[5] As the *Counts* court recognized, the caselaw "highlight[s] the uphill battle Plaintiff faces in ultimately certifying these classes—especially the nationwide classes," but ultimately determined that "[g]iven the case's infancy and the lack of any discovery on the class, striking Plaintiff's class allegations related to consumer fraud or unjust

---

[5] Defendant cites differences in the availability of affirmative defenses, but it has yet to file its Answer and set forth those affirmative defenses.

14

enrichment now would be premature." *Id.*

As such, the Court should decline Defendant's invitation to address class certification issues at this early stage.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion. Should the Court find any uncertainty in Plaintiff's allegations, Plaintiff respectfully requests leave to amend his complaint to cure any perceived deficiencies. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015) (citations omitted) ("In the face of that uncertainty, applying the liberal standard for amending pleadings, especially in the early stages of a lawsuit, is the best way to ensure that cases will be decided justly and on their merits.").

Date: May 31, 2024

Respectfully submitted,

**REESE LLP**

*/s/ Charles D. Moore*
Charles D. Moore
121 N. Washington Ave., 4th Floor
Minneapolis, Minnesota 55402
Telephone: 212-643-0500
Email: cmoore@reesellp.com

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email: mreese@reesellp.com

**BEN TRAVIS LAW, APC**
Ben Travis
4660 La Jolla Village Drive, Suite 100
San Diego, California 92122

15

Telephone: (619) 353-7966
Email: *ben@bentravislaw.com*

*Attorneys for Plaintiff and the Proposed Class*